BEN FRANKLIN V. THE STATE.

No. 3021.   Decided February 18, 1914.

**Local Option—Conflicting Testimony—Sufficiency of the Evidence.**

Where, upon trial of a violation of the local option law, the evidence, though conflicting, was sufficient to sustain a conviction, there was no reversible error.   Davidson, Judge, dissenting.

Appeal from the County Court of Houston.   Tried below before the Hon. C. M. Ellis.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

Following is the statement of facts in full: Anthony Bradley, being sworn testified as follows: My name is Anthony Bradley. I live at Weldon, Houston County, Texas, and I know Ben Franklin. He also lives near Weldon. On Saturday evening about the 8th day of June, 1913, Jim Patton and myself came to Weldon, arriving there about four o'clock in the evening in my wagon. On the way to Weldon, Jim Patton and myself discussed the matter of trying to obtain some whisky while in town. After we had arrived at Weldon, we met the defendant, Ben Franklin, and Jim Patton asked him, if he could get hold of any whisky, as we wanted to get some. Franklin stated that he did not know, but would see about it, and left us. Sometime thereafter, Patton and I went down about the seed house where we met Franklin again, and Patton asked him if he could get any whisky, and Franklin answered, "This is all I have," pulling out a bottle, containing about one-half quart of diluted alcohol, and handed it to me, and Jim Patton gave Franklin sixty-five cents in money. I took the bottle, and took a drink from it, and Patton also took a drink, and put the bottle with the balance of its contents in my wagon. I put it in my wagon, because Jim Patton told me to do this. I did not see Franklin in Weldon any more that afternoon. Very soon after I had placed the bottle in my wagon, the officers found it, and began making inquiry about where it was and where it had been gotten. The officers took Jim Patton and myself into the store of B. E. Goodrum, and kept us there until very near night, before they let us go home. While on our way home, and about one-half mile from town, in a western direction from town, we again saw Ben Franklin. who intercepted us, and asked us about what the officers wanted with us. We told him they were asking us about the whisky we had gotten. Thereupon Patton and Franklin walked off from the wagon and talked together, but I did not hear what was said between them. Franklin was living almost in an eastern direction from Weldon at that time. This whisky was sold to Jim Patton, and he paid sixty-five cents for it. I did not have any money that day, and could not have bought any. And did not buy any. The only reason I know why Franklin gave me the bottle was because Jim and myself were together at the time we first spoke for it, and were together at the time Jim bought it. He just handed me the bottle, and wanting a drink I took it. This occurred in Houston County, Texas, about the 8th day of June, 1913.

Cross by defendant: I had a talk with Mr. Moore this evening immediately after I came to town. This conversation occurred while sitting on Mr. Wm. Patton's front gallery. This conversation occurred in the presence of Ben Franklin and Jim Patton. It was not more than an hour since. I did not state in such conversation that Ben Franklin gave this whisky to me for my wife, on account of her being sick. I did not state in such conversation that I never seen Patton get any whisky from Franklin, nor that I never saw Patton pay Franklin any money. If I had made any such statement as inquired about to Mr. Moore on the front of Mr. Patton's store, it was false, and what I

have told here is the truth. Jim Patton did not take any of this whisky home with him, as we drank it all on our way home. Jim Patton, his boy, and myself drank it up. There is a case pending here against me for "boot-legging" which has never been tried. I do not know why it has not been tried. I have had no promise that this case would be dismissed by any one.

Jim Patton being sworn testified for the defendant: My name is Jim Patton. I live near Weldon in Houston County, Texas. About the 8th day of June, 1913, or within a very few days thereafter, I in company with my little boy and Anthony Bradley, went in Bradley's wagon to the town of Weldon. We got there early in the evening. While on the way, we talked about trying to get a little whisky to drink. Bradley and myself met Franklin and spoke to him about getting whisky but were informed by him that he had none. Later in the evening near the cotton seed house, I walked up to or, as I was walking up to where Bradley and Franklin were standing talking, I saw Franklin hand Bradley a bottle, and saw Bradley take a drink from it, and just as I reached them, Bradley walked off in the direction of his wagon and left Franklin standing there. I then asked Franklin if he could get me any whisky, and he told me that he did not know, but would try and do so. I gave him sixty-five cents and asked him to get me that much if he could, and we separated. I did not see Franklin any more that evening in Weldon, but did see him on our way home. Very soon after Bradley had gotten his whisky, or rather alcohol diluted, the officers found it in the wagon, and began making inquiry about where it had been gotten and whose it was. I never bought any whisky from Ben Franklin in my life, and neither did I ever pay him for any whisky, except as stated, I gave him sixty-five cents with which to get me some whisky on the same evening, and he gave me this money back the same evening, saying he had failed to find any. This was on the way home when he intercepted us in the wagon, and while in the wagon he stated he could not get the whisky and handed me the sixty-five cents. I did not get out of my wagon, or the wagon we were in, but Anthony Bradley did get out of the wagon, but do not know for what purpose. I never took any of this stuff home with me. Bradley, my boy, and myself drank it before we got home. I heard a conversation this evening, about one hour since, between Mr. Moore and Anthony Bradley while sitting on the front steps of Mr. Wm. M. Patton's store. Anthony Bradley stated to Mr. Moore, that he had never bought any whisky from Franklin, and that he had never seen Franklin sell any; but that on the date inquired about, he had approached Franklin to try and get a little whisky for his wife who was sick, and that Franklin had given him about a pint, which we drank. That he had neither paid nor promised to pay Franklin anything for this whisky. He further stated that he had never seen Franklin sell me any whisky.

Cross: After we had been taken before the officers, they questioned us about the whisky, there were present B. E. Goodrum, it being in his

store, Clint Atkinson, deputy sheriff, and others whose names I do not remember. I do not remember being sworn by Mr. Goodrum, nor do I remember whether I made the statement that I had gotten this whisky from Ben Franklin at that time. Ben Franklin did not give me the sixty-five cents until after they had had us before the officers, and until he met us that evening down the road. When he met us down the road going home he asked us what they had us up about.

Ben Franklin testified for himself: My name is Ben Franklin. I live at Weldon. I am the defendant on trial. About an hour since, in company with Jim Patton, Anthony Bradley on the steps of Mr. Patton's store, I heard a conversation between Mr. Moore and Anthony Bradley. Anthony Bradley stated to Mr. Moore that he had never seen me give or sell Jim Patton any whisky or other intoxicating liquors. He further stated to Mr. Moore that on the date inquired about while in Weldon, he, Bradley, asked me for some whisky and that I stated to him that I only had a little in a bottle, and Bradley stated that he wanted some for his wife, who was sick. That I then gave him what I had in a quart bottle, being only about a pint, and told him if his wife was sick he could take her that. That he, Bradley, took a drink, and left in the direction of his wagon. That he did not pay me anything nor did he promise me anything for the whisky I gave him. He further stated that he had never seen me either give or sell Jim Patton any whisky in his life. I never sold or gave Jim Patton any whisky or other intoxicating liquors. Neither did I sell this to Bradley, but gave it to him for his wife whom he said was sick. After Bradley had gotten this whisky, Jim Patton came to me and asked me if I could get him some whisky. I told him I did not know, but that I would try. He gave me sixty-five cents in money. I took this money and went down to the "quarters" and did not see him any more that evening until he and Bradley were on their way home, and I gave Patton back his money as I did not get him any whisky. I never sold either Patton or Bradley any whisky, but did take Patton's money in an effort to try and buy some for him, and failing to get any I returned him his money.

Cross: I never called on any person in an effort to get any whisky for Patton. I just went over in the quarters looking around to see who I could find there. I did not know when I took this money who I could get any whisky from. I did not ask any person if I could get any whisky from them or who I might get any from. I did not give Jim Patton his money back until after I had heard the officers were after them, that is, Patton and Bradley, about the whisky. I did not call Patton off to one side to give him his money, but gave it to him while he was in the wagon. I stopped them after crossing a field to give him his money back because I was going to a party, and did not want to spend any other man's money, and was afraid I might spend it if I kept it. I paid a fine last year on a charge of "boot-legging" here in Crockett. I pleaded guilty to that because I was guilty, but at the time I stated to the county attorney that I was not guilty although I was pleading guilty.

John I. Moore testified for the defendant:   This afternoon, as I was coming from my dinner and while passing a restaurant, I was called by the witnesses herein.   I had never seen the indictment in this case, and did not know who the State's witnesses were, but had a letter from Mr. Robinson engaging me to represent defendant, Franklin, and at his suggestion I had a subpoena issued for witnesses, Anthony Bradley and Jim Patton.   The parties told me who they were, and we sat down on the front steps of Wm. M. Patton's store to talk about this case.   Incidentally, I first asked Bradley what he knew about Franklin selling whisky.   He stated to me in presence of Franklin and Patton that he knew nothing whatever about such charge.   That on the day enquired about while in Weldon, he asked Franklin for some whisky for his wife, as she was sick, and he, Franklin, took out a bottle having about a pint in it, and gave it to witness, Bradley; that he, Bradley, did not pay Franklin anything for the whisky, nor did he promise Franklin anything for the whisky, but took it as a gift.   That he had never seen Jim Patton get any whisky from Franklin, and knew nothing about Patton paying Franklin any money or other thing of value for whisky or liquors.   This statement was made to me voluntarily, willingly and freely, only I simply asked that he tell me all he knew about this transaction, which he did as stated herein, in the presence of Ben Franklin and Jim Patton.

Clint Atkinson testified in rebuttal for State:   My name is J. C. Atkinson.   I am constable at Weldon, Texas, in justice precinct number eight.   I know Ben Franklin, Jim Patton and Anthony Bradley.   Sometime about the 8th day of June, 1913, I found some whisky in the wagon of Anthony Bradley, or at least in the wagon in which Bradley and Jim Patton came to town.   I took the whisky and summoned Bradley and Patton, and took them before Mr. B. E. Goodrum, a notary public, in the absence of the justice of the peace, and had him swear Jim Patton.   After he was sworn, Patton stated that he had bought the whisky from Ben Franklin and had paid him sixty-five cents for same and afterwards signed a written statement to the same effect.

*John I. Moore,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—It is contended the evidence is not sufficient. The writer agrees with this contention.   The witness Bradley testified that he saw Patton pay defendant sixty-five cents and the defendant gave or handed him a bottle containing something like a pint of diluted alcohol to Bradley, who took a drink and placed the same in his, Bradley's, wagon.   The allegation as to the purchaser was Patton and not Bradley. Bradley testified substantially that he and Patton were together and Patton asked appellant if he could get him some whisky, or something to drink; that the defendant, Franklin, handed Bradley a pint of diluted alcohol and he took a drink out of it and put it in his wagon and Patton

handed him sixty-five cents. Patton testified that he did not buy any whisky from appellant; that appellant handed Bradley the whisky as a gift to Bradley for Bradley's sick wife, and that after this occurred he asked appellant to get him something to drink and gave him sixty-five cents for that purpose. Failing to get this whisky or intoxicant, appellant subsequently handed the money back to Patton; that this money had nothing to do with the pint of diluted alcohol that Bradley got. Other witnesses testified to the effect that Bradley admitted to others, among them Mr. Moore, attorney for defendant, that he, Patton, did not buy any intoxicant from appellant; and the statements of these witnesses in regard to what Bradley said to them corroborates and sustains the testimony of the witness, Patton. Bradley is under indictment, he says, for boot-legging. The writer is not willing to affirm a case on this character of testimony. It is too flimsy and uncertain, and is too thoroughly contradicted by the evidence of Patton and the statements of Bradley to other witnesses. From any viewpoint of this case, this judgment ought not to have been rendered against appellant.

But the majority of the court, after reading the statement of facts, are of the opinion the judgment should be affirmed. The reporter will copy the statement of facts in full.

The judgment is, therefore, affirmed.

*Affirmed.*